IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA     RECEIVED
NORTHERN DIVISION

2016 AUG 19 P 1: 37

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| QBE Corporate Limited, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| BROWDER VENEER WORKS, INC., | * |
| | * |
| Defendant. | * |
| | * |

CIVIL ACTION NO. 2:16-cv-682

## COMPLAINT

This action arises out of an insurance claim for fire damage to the Defendant's buildings and contents. Among other relief, Plaintiff QBE Corporate Limited ("Plaintiff" and/or "QBE") asks the Court to declare that any amounts owed under the subject policy's property coverage are to be calculated at actual cash value rather than replacement cost value and are subject to a coinsurance requirement as applicable. QBE also asks the Court to declare, or to reform the policy to state, that any amounts owed under the policy's property coverage are subject to and limited by a Statement of Values provided by the Defendant, listing the values of the subject buildings and contents. In support of such relief, QBE alleges as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff QBE is the sole capitol provider to Syndicate 1886, which is one of many syndicates that transact business in the marketplace known as Lloyd's of London. QBE underwrote 30% of the policy of insurance at issue in this action, and thus subscribed to 30% of the risk on that policy. QBE is a corporation organized and existing under the laws of England, with its registered office and principal place of business in London, England. QBE is entitled to maintain this action for declaratory judgment under the policy of insurance at issue without

joining the other subscribers to the policy and without regard to their citizenship. See Corfield v. Dallas Glen Hills, LP, 355 F.3d 853, 864 (5th Cir. 2003); Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1091-92 (11th Cir. 2010) (*dicta* agreeing with and endorsing holdings in Corfield and similar cases).

2.      Defendant Browder Veneer Works, Inc. ("Defendant" and/or "Browder") is an Alabama corporation with its principal place of business in Montgomery, Alabama.

3.      The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4.      The Court has jurisdiction of this action under 28 U.S.C. § 1332(a)(2), because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and because the action is between a citizen of a state and a citizen or subject of a foreign state.

## THE POLICY AND BROWDER'S DAMAGE CLAIM

5.      Certain Underwriters at Lloyd's, London ("Underwriters") issued commercial property policy no. RM02711 (the "Policy") to Browder, effective January 7, 2014 through January 7, 2015. **(Policy, Exhibit "A").**  As noted above, QBE subscribed to 30% of the risk on the Policy.  Among other coverages, the Policy provides coverage for fifteen (15) "buildings" located on Browder's premises at 1401 McDonough Street, Montgomery, Alabama and for the contents of those buildings.

6.      Prior to issuance of the Policy, Browder executed and provided Underwriters with a Statement of Values, listing, by building name and number, the values of Browder's buildings and their respective contents as follows:

|  | Bldg. | Contents |
|---|---|---|
| 1 office | $ 40,000.00 | $ 7,000.00 |
| 2 warehouse | $ 40,800.00 |  |
| 3 shop | $ 20,400.00 | $ 198,000.00 |

2

| | | |
|---|---|---|
| 4 Middle Room | $ 91,800.00 | $ 28,000.00 |
| 5 Dry Kiln | $ 71,400.00 | $240,000.00 |
| 6 Storage | $ 40,800.00 | |
| 7 Dry Kiln | $ 116,280.00 | $ 80,000.00 |
| 8 Lathe Room | $ 99,520.00 | $200,000.00 |
| 9 Saw Open Shed | $ 2,000.00 | $ 2,400.00 |
| 10 Debarking Shed | $ 2,000.00 | $ 32,000.00 |
| 11 Power House | $ 4,000.00 | $ 16,000.00 |
| 12 Chipper Shed | $ 8,000.00 | $ 28,000.00 |
| 13 Boiler House | $ 44,000.00 | |
| 14 Stand by Boiler | $ 4,000.00 | |
| 15 Break House | $ 3,000.00 | |

7.    Correspondence between Underwriters and Browder, via its agent, confirms that Underwriters advised in explicit terms that it would not issue the Policy with blanket coverage limits for the property (buildings and contents) and that Browder's property coverage was to be underwritten and issued with each of Browder's fifteen (15) buildings having separate coverage limits for buildings and contents. **(Correspondence to Browder Counsel with Various Pre-inception Communications between Underwriters and Browder, Exhibit "B").**

8.    On August 29, 2014, a fire damaged five of Browder's buildings (building nos. 4, 5, 6, 7, and 8, as listed in the Statement of Values) and the contents of those buildings. Browder made a claim under the Policy for this damage and for associated business interruption/extra expense and inventory/stock losses.

9.    The Policy contains separate coverages for (1) business interruption/extra expense, (2) inventory/stock, and (3) property (building and contents). Following the fire, Underwriters paid the Policy's full $750,000.00 business interruption/extra expense coverage to Browder and, after adjustment, including consultation with appropriate parties, paid $129,736.00

3

of the Policy's $169,600.00 inventory/stock coverage to Browder. Underwriters also paid Browder $724,277.63 for its property damage, calculated at actual cash value ("ACV") and limited by building consistent with the Statement of Values provided prior to Policy inception by Browder.

10.    Underwriters contend that Browder's inventory/stock claim has been paid in full based on Underwriters' previous inventory/stock payments of $129,736.00, consistent with the Policy's language, provisions, and/or endorsements, to include the Policy's ACV valuation of inventory as stock that has not yet been sold.

11.    Browder claims that Underwriters owe the $39,864.00 balance of the Policy's $169,600.00 inventory/stock coverage limits. Thus, there is an actual, existing, justiciable controversy between the parties as to the amount owed under the Policy for inventory/stock, which the Court has jurisdiction to determine.

12.    Underwriters contend that Browder's claim for buildings and contents has been paid in full (or overpaid) based on Underwriters' previous property payments totaling $724,277.63, consistent with the Policy's language, provisions, and/or endorsements, to include the Policy's ACV valuation of property, 80% coinsurance requirement as applicable, and application of the Statement of Values limitations to Browder's property claim for damages related to building nos. 4, 5, 6, 7, and 8.

13.    Browder has submitted a replacement cost value ("RCV") claim for approximately $1,984,414.21 in total damaged property (buildings and contents) against Underwriters' previous property coverage payments totaling $724,277.63.[1] **(April 20, 2016**

---

[1] While Browder has not formally conceded this point, Browder's consultant and contractor, Metro Services, Inc. ("Metro Services") has opined that Browder's claim for fire loss to Browder's two (2) driers or kilns is in the area of $539,572.41 and not $957,663.13 as seemingly claimed by Browder. If Metro Services' $539,572.41 assessment of damage to Browder's driers is substituted for the $957,663.13

**Correspondence re: Browder's Property Claim, Exhibit "C").** While the exact amount is in question and subject to various coverage items and other Policy language, provisions, and/or endorsements, Browder claims payment of RCV rather than ACV for its property-damage claim, and Browder contends that its claim is not subject to or limited by the Statement of Values. Thus, there is an actual, existing, justiciable controversy between the parties as to the amount owed under the Policy for the damaged buildings and contents, which the Court has jurisdiction to determine.

14.     The effect of calculating amounts claimed and/or owed at ACV consistent with the Policy rather than RCV as claimed by Browder is to reduce Browder's claim by a depreciation figure as a percentage consistent with the building or property's age and condition or state of repair at the time of loss.[2]

15.     Limiting Browder's claim for damage to building and contents in accordance with the Statement of Values limitations further reduces the amount payable, because the amounts owed for buildings nos. 4, 5, 6, and 7 are limited to the amounts set forth for those buildings in the Statement of Values (ACV of the damage to buildings no. 8 was less than the amount stated for that building in the Statement of Values). It further reduces the contents ACV payment, because the amounts owed for the contents of building nos. 6 and 7 is limited to the amount set forth for those contents in the Statement of Values (ACV of the damage to the contents of buildings nos. 4, 5, and 8 was less than the amounts stated for those contents in the Statement of

---

figure advanced by Browder counsel, Browder's total RCV claim for buildings and contents is approximately $1,566,323.49 against Underwriters' previous property coverage payments totaling $724,277.63.

[2] For example, using thirty (30) percent as a conservative figure for depreciation, a $1,566,323.49 RCV claim for buildings and contents for building nos. 4, 5, 6, 7, and 8 (ref. FN no. 1) would adjust downward to $1,096,426.44 ACV before application of the Statement of Values limitations to Browder's claim.

PD.19060726.1

Values). Thus, applying the Statement of Values results in an additional reduction of Browder's claim for damage to buildings and contents.

16.     The Policy also contains an 80% coinsurance requirement, which, as applicable, could result in an additional reduction of Browder's property claim.

## COUNT I

## DECLARATORY JUDGMENT THAT NO ADDITIONAL AMOUNT IS OWED UNDER THE POLICY'S INVENTORY/STOCK COVERAGE

17.     The Policy contains $169,600.00 inventory/stock coverage limits.

18.     The Policy declarations state:

*SPECIAL CONDITIONS:*

*Valuation:  Actual Cash Value*

19.     The Policy states:

**E.     Loss Conditions**

...

**4.     Loss Payment**
    *a.* *In the event of loss or damage covered by this Coverage Form, at our option, we will either:*

        *(1) Pay the value of lost or damaged property;*
        *(2) Pay the cost of repairing or replacing the lost or damaged property...;*
        *(3) Take all or any part of the property at an agreed or appraised value; or*
        *(4) Repair, rebuild or replace the property with other property of like kind and quality....*

    *We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.*

20.     The Valuation Condition in the Policy states:

**7.     Valuation**

PD.19060726.1

> *We will determine the value of Covered Property in the event of loss or damage as follows:*
>
> ***a.*** *At actual cash value as of the time of loss or damage, except as provided in b., c., d. and e. below.*
>
> ...
>
> ***c.*** *"Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.*

None of subparagraphs b., d., or e. is applicable to Browder's claims for damage to its inventory/stock.

21.    Based on the above provisions of the Policy, any amount that QBE owes for damage to Browder's inventory/stock is to be determined at ACV under subparagraph a. unless the inventory/stock has already been "sold but not delivered" at the time of the loss. Because the inventory/stock claimed by Browder had not actually been "sold" at the time of the damage, Browder's inventory/stock is to be determined at ACV under subparagraph a. and not "selling price less discounts and expenses" under subparagraph c.

WHEREFORE, the premises considered, QBE prays that the Court will issue a declaratory judgment that any amount that QBE owes for damage to Browder's inventory/stock is to be determined at ACV under subparagraph a. and not "selling price less discounts and expenses" under subparagraph c. QBE further prays that the Court will issue a declaratory judgment that Browder's inventory/stock claim has been paid in full based on Underwriters' previous inventory/stock payments of $129,736.00, and that no other amounts are owed under the Policy. QBE further prays for such other, further, or different relief as may be warranted, the premises considered.

## COUNT II

## DECLARATORY JUDGMENT THAT ANY AMOUNT OWED UNDER THE POLICY'S PROPERTY COVERAGE IS TO BE DETERMINED AT ACV, NOT RCV, AND IS SUBJECT TO AN 80% COINSURANCE REQUIREMENT AS APPLICABLE

7

22.     The Policy declarations state:

        *SPECIAL CONDITIONS:*

        *Valuation: Actual Cash Value*

        *Coinsurance: 80% on Property;...*

23.     The Policy states:

        **E.      Loss Conditions**

                                          ...

        **4.      Loss Payment**
                **a.** *In the event of loss or damage covered by this Coverage Form,
                at our option, we will either:*

                *(5) Pay the value of lost or damaged property;*
                *(6) Pay the cost of repairing or replacing the lost or damaged
                property...;*
                *(7) Take all or any part of the property at an agreed or appraised
                value; or*
                *(8) Repair, rebuild or replace the property with other property of
                like kind and quality....*

                *We will determine the value of lost or damaged property, or the
                cost of its repair or replacement, in accordance with the
                applicable terms of the Valuation Condition in this Coverage Form
                or any applicable provision which amends or supersedes the
                Valuation Condition.*

        **F.      Additional Conditions**

        **1.      Coinsurance**
                *If a coinsurance percentage is shown in the Declarations, the
                following condition applies:*
                **a.** *We will not pay the full amount of any loss if the value of
                Covered Property at the time of loss times the Coinsurance
                percentage shown for it in the Declarations is greater than the
                limit of Insurance for the property.*

                *Instead, we will determine the most we will pay using the following
                steps:*

                *(1) Multiply the value of Covered property at the time of the Loss
                by the Coinsurance percentage;*

8

*(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);*
*(3) Multiply the total amount of loss, before the application of any deductible by the figure determined in Step (2); and*
*(4) Subtract the deductible from the figure determined in Step (3).*

*We will pay the amount determined in Step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.*

24.     The Valuation Condition in the Policy states:

**7.      Valuation**
*We will determine the value of Covered Property in the event of loss or damage as follows:*

**a.** *At actual cash value as of the time of loss or damage, except as provided in b., c., d. and e. below.*

None of subparagraphs b. through e. is applicable to Browder's claims for damage to its buildings and contents.

25.     Based on the above provisions of the Policy, any amount that QBE owes for damage to Browder's buildings and contents is to be determined at ACV, not RCV, and is subject to an 80% coinsurance requirement as applicable.

WHEREFORE, the premises considered, QBE prays that the Court will issue a declaratory judgment that any amount that QBE owes for damage to Browder's buildings and contents is to be determined at ACV, not RCV, and is subject to an 80% coinsurance requirement as applicable. QBE further prays that the Court will issue a declaratory judgment that Browder's property claim has been paid in full or overpaid based on Underwriters' previous property payments totaling $724,277.63, consistent with the Policy's language, provisions, and/or endorsements, to include the Policy's ACV valuation of property, 80% coinsurance requirement as applicable, and application of the Statement of Values limitations to Browder's property claim

PD.19060726.1

for damages related to building nos. 4, 5, 6, 7, and 8. QBE further prays for such other, further, or different relief as may be warranted, the premises considered.

## COUNT III

## DECLARATORY JUDGMENT OR POLICY REFORMATION THAT ANY AMOUNT OWED UNDER THE POLICY'S PROPERTY COVERAGE FOR BUILDINGS OR CONTENTS IS SUBJECT TO AND LIMITED BY STATEMENT OF VALUES

26.     Commercial property policies that insure more than one building or type of property are sometimes issued with "blanket" policy limits, meaning that the coverage is subject to a total limit payable for any loss, regardless of what particular building or other property is damaged. Alternatively, such policies may be issued subject to a statement or schedule of values, stating the value of each building or other type of property and limiting amounts payable for damage to each building or type of property to the stated value of that building or property (and also subject to a total, overall limit for all property damage).

27.     Prior to issuance of the Policy, a representative of Browder executed a Statement of Values, listing the value of each of Browder's buildings and their contents.

28.     Browder's agent, Aronov Insurance, Inc., provided the Statement of Values to Underwriters' agent, AmWINS Brokerage of Georgia, LLC, as part of Browder's application for the Policy.

29.     Email correspondence between Aronov and AmWINS clearly demonstrates that that Aronov (and therefore Browder) and AmWINS (and therefore Underwriters) understood and intended that Browder's coverage under the Policy for buildings and contents would be subject to and limited by the Statement of Values.

PD.19060726.1

30.    The binder for the Policy, which preceded issuance of the Policy and which is dated January 6, 2014, states that the "Limits of Liability" are "$1,589,000 Real and Personal Property (scheduled per application)" (emphasis added).

31.    Underwriters would have either not issued the Policy or charged a higher premium for the Policy had the limits not been subject to the Statement of Values.

32.    The Policy itself does not refer to the Statement of Values; rather, it states: "Limits: $1,589,000 Real and Personal Property." However, the parties clearly intended that coverage be subject to and limited by the Statement of Values.

33.    The Policy also provides coverage for loss of inventory and business income. The limits for these coverages are expressly stated as "blanket" limits: "$169,600 Blanket Inventory; $750,000 Blanket Business Income With Extra Expense." In contrast, the Policy does not refer to the limit for real and personal property coverage as a "blanket" limit; the Policy simply states: "Limits: $1,589,000 Real and Personal Property."

34.    To the extent that the Policy does not expressly state that coverage for real and personal property is subject and limited by the Statement of Values, the Policy does not truly express the intention of the parties, due to a mutual mistake of the parties or a mistake of Underwriters, which Browder or its agent Aronov at the time knew or suspected. Therefore, the Policy should be reformed to expressly state that coverage for real and personal property is subject to and limited by the Statement of Values, in accordance with the parties' intent and consistent with Alabama law.

WHEREFORE, the premises considered, QBE prays that the Court will issue a declaratory judgment that coverage for real and personal property under the Policy is subject to and limited by the Statement of Values, or alternatively, reform the Policy so as to make it

11

expressly state that coverage for real and personal property is subject to and limited by the Statement of Values. QBE further prays that the Court will issue a declaratory judgment that Browder's property claim has been paid in full or overpaid based on Underwriters' previous property payments totaling $724,277.63, consistent with the Policy's language, provisions, and/or endorsements, to include the Policy's ACV valuation of property, 80% coinsurance requirement as applicable, and application of the Statement of Values limitations to Browder's property claim for damages related to building nos. 4, 5, 6, 7, and 8. QBE further prays for such other, further, or different relief as may be warranted, the premises considered.

A. GRADY "BO" WILLIAMS IV
WILLIAM E. SHREVE, JR
Attorneys for Plaintiff

OF COUNSEL:

PHELPS DUNBAR LLP
P. O. Box 2727
Mobile, AL 36652
(251) 432-4481

**DEFENDANT IS TO BE SERVED BY PROCESS SERVER OR BY CERTIFIED MAIL AS FOLLOWS:**

**Browder Veneer Works, Inc.**
**c/o Charles Browder**
**1401 N. McDonough Street**
**Montgomery, AL 36104**